# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NATURAL RESOURCES | : | | |
| DEFENSE COUNCIL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-0340 (RMU) |
| | : | | |
| v. | : | Document No.: | 8 |
| | : | | |
| STEPHEN JOHNSON, | : | | |
| Acting Administrator, U.S. Environmental | : | | |
| Protection Agency, | : | | |
| | : | | |
| and | : | | |
| | : | | |
| U.S. ENVIRONMENTAL PROTECTION | : | | |
| AGENCY, | : | | |
| | : | | |
| Defendants.[1] | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION TO DISMISS[2]

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss.  The plaintiff

filed the instant suit on February 17, 2005, claiming that the defendant, the Environmental

Protection Agency ("EPA"), violated statutory and regulatory reporting requirements in its

---

[1]      The plaintiff brings this suit against both Stephen Johnson in his official capacity as Acting Administrator of the Environmental Protection Agency ("EPA") and against the EPA.  Compl. ¶ 8.  For clarity, the court refers to the defendants in the singular.

[2]      The defendant styles its motion as a motion to dismiss or, in the alternative, for summary judgment.  Because summary judgment is inappropriate until the plaintiff has had an opportunity for discovery, *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997), the court treats the defendant's motion as a motion to dismiss.

registration of two pesticides.  Specifically, the plaintiff alleges that the defendant violated[3] the

Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7.U.S.C. §§ 136 *et seq.*, and its

implementing regulations, 40 C.F.R. §§ 154, 155, when it failed to enter certain materials on the

public docket, and that the defendant violated the Federal Advisory Committee Act ("FACA"), 5

U.S.C. App. 2 § 1 *et seq.* when it developed its atrazine monitoring program.  In the alternative,

the plaintiff seeks a writ of mandamus compelling the defendant to enter documents on the

public docket.  Because the defendant has not taken final agency action and because the plaintiff

does not have standing to bring a FACA claim, the court grants the defendant's motion to

dismiss.  Moreover, a writ of mandamus is not appropriate in the instant case because the

plaintiff has not exhausted its judicial remedies.


## II.  BACKGROUND

### A.  Factual Background

The plaintiff is a nonprofit environmental organization that advocates for "the proper

regulation of pesticides."  Compl. ¶¶ 3-4.  The plaintiff alleges that many of its members are

exposed to the pesticides aztraine and dichlorvos through their food and drinking water.  *Id.* ¶ 6.

Atrazine is an herbicide used on crops such as corn.  *Id.* ¶ 34.  Dichlorvos is an insecticide used

in homes, work places, and agricultural areas, such as green houses and barns.  *Id.* ¶ 33.  As part

of its regulatory function, the defendant has undertaken periodic reviews of these two pesticides

---

[3]      The plaintiff also alleges Freedom of Information Act ("FOIA") violations.  Because the briefing
of the parties' FOIA claims is currently stayed, the court does not consider those claims in the instant
memorandum opinion.

to analyze whether they pose an environmental risk.  *Id.*  ¶¶ 14, 19, 28, 33, 34, 35.

The plaintiff alleges that the defendant's review processes for atrazine and dichlorvos do not comply with the defendant's own implementing regulations.  *Id.* ¶ 38.  The plaintiff also states that the defendant improperly relied on advisory committees during its periodic reviews of atrazine.  *Id.* ¶¶ 46-54.  Additionally, the plaintiff also asserts that the defendant entered into secret agreements with manufacturers of atrazine and dichlorvos, allowing the use of these pesticides to continue "essentially unfettered."  *Id.* ¶¶ 44, 45.  According to the plaintiff, the defendant's failure to follow procedural regulations "have led the agency to make decisions that pose human health and environmental risks."  Pl.'s Opp'n at 18.

## B.  Procedural History

The instant suit stems from the plaintiff's allegations that the defendant failed to follow its own procedural requirements when conducting periodic reviews of the pesticides atrazine and dichlorvos.  On February 17, 2005, the plaintiff filed a complaint alleging "rampant violations of key procedural requirements in connection with the agency's consideration of the adverse effects of various pesticides on human health and the environment."  Compl. ¶ 1.  In response to the complaint, the defendant filed a motion to dismiss.  The court now turns to the defendant's motion.

### III.  ANALYSIS

### A. Statutory Background

### 1.  Federal Insecticide, Fungicide, and Rodenticide Act

FIFRA establishes a federal registration, or licensing, scheme governing the sale, distribution, and use of pesticides.  7 U.S.C. §136a(a); *see also Bates v. Dow Agrosciences LLC*, 125 S. Ct. 1788, 1797 n.14 (2005) (explaining that a person or company wishing to sell or distribute a pesticide must "obtain a registration, or license, from EPA").  The EPA may only register a pesticide after it determines, *inter alia*, that the pesticide "when used in accordance with widespread and commonly recognized practice[,] will not generally cause unreasonable adverse effects on the environment."  7 U.S.C. § 136a(c)(5)(D).  Once a pesticide is registered, the EPA may cancel the registration if the EPA determines that the pesticide causes "unreasonable adverse effects on the environment."  7 U.S.C. § 136d(b).  The EPA uses numerous types of review processes to periodically reevaluate a registered pesticide's risks and benefits.  *Beyond Pesticides/Nat'l Coalition Against the Misuse of Pesticides v. Whitman*, 294 F. Supp. 2d 1, 3 (D.D.C. 2003).  Three of those review processes are at issue in this case: (1) the Special Review process, (2) the Registration Standard process, and (3) the Reregistration review process.[4]

   In addition to providing for different review processes, FIFRA also contains a provision

---

[4]   According to the defendant, "[t]hose processes differ both in terms of their origin (some are statutorily required, some are embodied in regulations, and some remain informal) and the level of public participation they require (some specifically require opportunities for public participation, while others do not require any public involvement)."  Def.'s Mot. at 5

for judicial review.  "[T]he refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States."  7 U.S.C. § 136n(a).  Further, when the EPA issues an order following a public hearing, "any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review" by filing a petition requesting that the order be set aside in the "United States court of appeals for the circuit wherein such person resides or has a place of business."  7 U.S.C. § 136n(b).

## 2. Federal Advisory Committee Act

FACA regulates any "advisory committee . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government."  5 U.S.C. App. 2 § 3(2).  One of the purposes behind FACA is to keep Congress and the public informed about the activities of advisory committees.  5 U.S.C. App. 2 § 2(b)(5).  "Subject to [the Freedom of Information Act ("FOIA")], the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection."  5 U.S.C. App. 2 § 10(b); *see also Cummock v. Gore*, 180 F.3d 282, 289 (D.C. Cir. 1999).  By requiring public disclosure, Congress attempted to control the costs of maintaining advisory committees and to limit their influence on the official decision-making process.  *Pub. Citizen v. Dep't. of Justice,* 491 U.S. 440, 445-47 (1989).

## B.  The Court Lacks Jurisdiction to Address the FIFRA Claims

The plaintiff alleges that the defendant violated FIFRA because it failed to docket, or make available to the public, materials in connection with the: (1) atrazine and dichlorvos Special Reviews, Compl. ¶ 67 (2) the atrazine and dichlorvos Registration Standards process, Compl. ¶ 67, and (3) the atrazine reregistration review process, Compl. ¶ 64.  The defendant argues that the court does not have subject-matter jurisdiction over these claims because the EPA has not yet taken a final agency action.  For the reasons that follow, the court grants the defendant's motion to dismiss the plaintiff's FIFRA claims.

### 1.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction

6

only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Generally, for a court to have jurisdiction over claims seeking judicial review of an agency action under the APA, it must determine that the action is final. *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001); *see also Ticor Title Ins. Co. v. Fed.Trade Comm'n*, 814 F.2d 731, 746 n.2 (D.C. Cir. 1987) (noting that the finality requirement also applies to "agency action made reviewable by statute"). A final agency action "(1) 'marks the consummation of the agency's decision making process – it must not be of a merely tentative or interlocutory nature'; and (2) the action 'must be one by which rights or obligations have been determined or from which legal consequences will flow.'" *Domestic Secs. v. Secs. & Exch. Comm'n*, 333 F.3d. 239, 246 (D.C. Cir. 2003) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see Nat'l Ass'n of*

7

*Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005).  A court therefore must consider "whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties."  *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

### 2.  The EPA has Not Taken a Final Agency Action with Respect to the Atrazine and Dichlorvos Special Reviews

The EPA may conduct a review known as a Special Review if it determines, "based on a validated test or other significant evidence," that a pesticide poses one or more specific, identified risks to the environment.[5]  40 C.F.R. § 154.7.  "Through this informal review, the Agency examines the risks and benefits of these pesticides, and determines what regulatory actions to take to reduce risks."  49 Fed. Reg. 37916, 37921 (Sept. 26, 1984).  If the EPA decides to initiate a Special Review, it must comply with certain docketing requirements.  40 C.F.R. §154.15.  Documents, proposals, comments, correspondence or other materials concerning a pending Special Review provided by non-governmental parties to the EPA are among those materials that must be placed in the docket.  *Id.*

The plaintiff alleges that the defendant failed to docket, or docketed in an untimely fashion, certain materials related to the Special Reviews of atrazine and dichlorvos.  Compl. ¶¶

---

[5]     Once the EPA "notifies registrants privately that it is considering issuance of a Notice of Special Review for a pesticide, it shall establish a docket concerning that particular pesticide."  40 C.F.R. § 154.15.  Before issuing a final decision on a pesticide in Special Review, the EPA must issue a Notice of Preliminary Determination and take public comment.  40 C.F.R. §§ 154.31, 154.33.

64- 67; Pl.'s Opp'n at 20, 26.  The scope of this court's review under FIFRA,[6] however, is limited to "final agency action."  7 U.S.C. § 136n(a).  In this case, the final action necessary to "mark the consummation of the agency's decisionmaking process," *Bennett*, 520 U.S. at 177-78, is the defendant's conclusion of the Special Review process.  *Beyond Pesticides*, 294 F. Supp. 2d at 9 n.7 (stating that FIFRA's judicial review provision "contemplates that any person seeking judicial review under FIFRA would be doing so after entry of an *order*") (emphasis in original); *see also Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000) (holding that an agency's violation of procedural regulations requiring the agency to inventory and monitor certain environmental resources was not a final agency action because it did not "mark the consummation of the agency's decisionmaking process") (quoting *Bennett*, 520 U.S. at 177-78).

The plaintiff acknowledges that the defendant has not concluded the Special Reviews for atrazine or dichlorvos.  Compl. ¶ 33; Pl.'s Opp'n at 26.  Because the requirement that the EPA include certain documents in the public docket during the Special Review process is merely one part of the ongoing review process, docketing constitutes a procedural and intermediate action. *Beyond Pesticides*, 294 F. Supp. 2d at 9 (determining that the EPA's decision to continue with an ongoing review process was not a final agency action); *Nader v. Volpe*, 466 F.2d 261, 268 (D.C.

---

[6]     The plaintiff alleges that the court has jurisdiction to review the alleged violations under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706 *et seq*.  Compl. ¶¶ 64-67.  But, FIFRA contains its own judicial review provision, thereby precluding judicial review under the APA.  *Beyond Pesticides/Nat'l Coalition Against the Misuse of Pesticides v. Whitman*, 360 F. Supp. 2d 69, 71 (D.D.C. 2004).  The APA, however, provides the contour of the court's review.  *Defenders of Wildlife v. Envt'l Prot. Agency*, 882 F.2d 1294, 1303 (8th Cir. 1989) (stating that the APA "state[s] the scope of review" under FIFRA and that "the APA does not operate separately from FIFRA, but instead as a part of FIFRA").  *See also San Juan Audobon Soc'y v. Veneman*, 153 F. Supp. 2d 1, 6 (D.D.C. 2001) (analyzing whether an alleged violation of FIFRA constituted a final action under the APA).

Cir. 1972) (explaining that policy considerations "dictate that judicial intervention in uncompleted administrative proceedings . . . must remain very much the exception rather than the rule" and that "when Congress has enacted a specific statutory scheme for obtaining review," the court must adhere to the statutory mode of review"). Because placing materials in the public docket is not a final agency action, the court does not have subject-matter jurisdiction to review the alleged violations of the docketing regulations. *Cobell*, 240 F.3d at 1095.

The plaintiff argues, in the alternative, that the defendant's failure to disclose certain information or to docket particular documents constitutes a "pattern, practice and policy" of violating FIFRA's Special Review regulations. Compl. ¶ 67. "Under the APA, plaintiffs may challenge a policy that constitutes final agency action as unlawful." *Natural Res. Defense Council v. Abraham*, 223 F. Supp. 2d 162, 193 (D.D.C. 2002), *vacated in part on other grounds*, 353 F.3d 40, 41 (D.C. Cir. 2004). As stated *supra*, however, placement of materials on the public docket is not a final agency action. In the instant case, moreover, the plaintiff concedes that the defendant has complied with the Special Review regulations to some extent. Pl.'s Opp'n, Ex. 1 ("Colangelo Decl.") ¶14. That is, the defendant established the required dockets for the Special Reviews and placed some materials in those dockets. Def.'s Mot. at 24. The defendant's failure to place materials in the docket in strict conformance with the regulations is not a final agency action, even if the plaintiff believes that the defendant's actions have not complied with the regulatory requirements. *Sierra Club*, 228 F.3d at 568; *see also Ecology Ctr., Inc v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999). Because the defendant has not taken

a final agency action,[7] the court does not have jurisdiction to hear the plaintiff's claims regarding the Special Review docket.[8]

### 3. The EPA has Not Taken a Final Agency Action with Respect to the Atrazine and Dichlorvos Registration Standards Process

In 1985, Congress created a review process known as the Registration Standard to provide the EPA with guidance on how to review pesticides registered between 1947 and 1972. 50 Fed. Reg. 12208, 12209 (Mar. 27, 1985).  As part of the Registration Standard review process, the EPA "undertakes a thorough review of the scientific data base underlying pesticide registrations, and makes broad regulatory decisions for a group of pesticide products containing the same active ingredient rather than on a product-by-product basis."  49 Fed. Reg. 37916, 37921 (Sept. 26, 1984).  The implementing regulations for the Registration Standard process require the EPA to create a public docket for each Registration Standard under development.  40

---

[7]     The plaintiff submitted an e-mail from the Director of the Special Review and Reregistration Division within the defendant's Office of Pesticide Programs ("OPP"), which instructed OPP employees as to "Docketing Procedures in SRRD."  Pl.'s Suppl. Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Suppl."), Ex. 1 ("Second Colangelo Decl.") ¶ 4; Second Colangelo Decl., Attach. A.  The plaintiff submits this e-mail as evidence that the defendant has a pattern, practice, and policy of violating the Special Review docketing regulations.  Because the e-mail discusses Reregistration reviews, however, it does not constitute evidence that the defendant has a policy of violating the Special Review regulations. Therefore, the e-mail is not evidence of a pattern, practice and policy which violates the Special Review regulations.

[8]     The plaintiff also argues that the defendant's failure to comply with the docketing regulations constitutes "agency action unlawfully withheld," and requests that the court compel the defendant to comply with the docketing requirements.  Compl. ¶¶ 68, 69.  A court may compel an agency to take an action unlawfully withheld only if that action, if taken, would constitute a final agency action.  *Norton v. S. Utah Wilderness Alliance*, 124 S. Ct. 2373, 2378-79 (2004).  Moreover, the defendant here has created the required dockets and has placed some materials in those dockets.  Where an agency "has been acting, but the [plaintiff] simply do[es] not believe its actions have complied with the" applicable regulations, the plaintiff may not evade the finality requirement.  *Sierra Club v. Peterson*, 228 F.3d 559, 569 (5th Cir. 2000).

C.F.R. § 155.32(a).  Among those materials to be included in the public docket are any memoranda, comments, correspondence or other written materials submitted by outside parties concerning the Registration Standard under development.  *Id.* §§ 155.32(b)(3) and (4).

The plaintiff's complaint makes vague allegations that the defendant failed to comply with the Registration Standard provisions requiring the defendant to include certain materials in the public docket.  Compl. ¶¶ 23-27, 29, 32, 67, Prayer for Relief.  The defendant issued a Registration Standard for atrazine in 1983, and it issued a Registration Standard for dichlorvos in 1987.  Def.'s Mot. at 25.  The defendant moves the court to dismiss these claims, arguing that the applicable statute of limitations precludes the plaintiff's claim.[9]  The plaintiff, in its opposition to the defendant's motion, states that it is not challenging the Registration Standards.  Pl.'s Opp'n at 26 n.11.  Accordingly, the court grants the defendant's motion to dismiss the plaintiff's allegations that the defendant did not comply with the appropriate Registration Standards procedures.

### 4.  The EPA has Not Taken a Final Agency Action with Respect to the Atrazine Reregistration Review

In 1988 Congress created another type of review process, known as Reregistration, by adding section 136a-1 to FIFRA.  "The [R]eregistration process is separate and distinct from the Special Review . . . process[]."  *Beyond Pesticides*, 294 F. Supp. 2d at 3.  Under Reregistration, the EPA reviews the registration of pesticides registered prior to 1984 by conducting a five-phase

---

[9]      Specifically, the defendant argues that the statue of limitations for claims against the United States is six years, and that the court lacks jurisdiction to review time-barred claims.  Def.'s Mot. at 25 (citing 28 U.S.C. § 2401(a) and *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990)).

review.  7 U.S.C. § 136a-1(a).  "During reregistration, registrants submit additional data and studies regarding the risks and benefits associated with the pesticide." *Beyond Pesticides*, 294 F. Supp. 2d at 3-4.  At the end of the Reregistration process, the EPA issues a Registration Eligibility Decision ("RED") stating whether a particular pesticide is eligible for reregistration. Def.'s Mot. at 8.  In certain instances, the EPA issues an Interim Registration Eligibility Decision ("IRED") prior to issuing a RED.  *Id.*  The defendant issued an IRED for atrazine in January 2003, and a revised IRED in October 2003.  Compl. ¶ 43.  Though the plaintiff expects the defendant to issue an IRED for dichlorvos this year, the defendant has not made any decision to date.  Compl. ¶ 45.  The defendant has not issued a RED for atrazine or dichlorvos.  Compl. ¶¶ 44, 45; Def.'s Mot. at 11.

The plaintiff argues that the EPA is required to maintain a public docket when it conducts a Reregistration review, and that the EPA failed to do so when it conducted its Reregistration review of atrazine.  Pl.'s Opp'n at 30.  As a result, the plaintiff requests that the court set aside the IREDs that the EPA issued for atrazine in January 2003 and October 2003.  Compl. ¶¶ 64, Prayer for Relief.  According to the plaintiff, the atrazine IREDs constitute final agency actions for the purposes of judicial review under the APA.  Compl. ¶ 43.

Although the plaintiff asserts that the atrazine IREDs constitute a final agency action,[10] the plaintiff does not dispute the EPA's assertion that it issues an IRED when it has "completed its assessment of an individual pesticide's ecological and worker risks, but is still assessing the

---

[10]     The plaintiff's supplemental opposition to the defendant's motion to dismiss, however, states that a Registration Eligibility Decision is a final action.  Second Colangelo Decl. ¶ 4

cumulative effects of that pesticide."  Compl. ¶ 20; Def.'s Mot. at 8.  Once the EPA completes its

assessment of a pesticide's cumulative effects, it issues a RED.  *Id.*  "[T]he issuance of a RED,

whether it be one revoking, modifying, or leaving in place a tolerance, constitutes the agency's

final determination, at the conclusion of a statutorily mandated review process."  *New York v.*

*Envt'l Prot. Agency*, 350 F. Supp. 2d 429, 435 (S.D.N.Y. 2004).  Because the IRED is a report

that the defendant issues once it has conducted some, but not all, of the required scientific

evaluations, it does not constitute a final agency action.[11]  Accordingly, the court does not have

subject-matter jurisdiction to review the defendant's docketing practices with respect to the

---

[11]     Assuming *arguendo* that the defendant's Interim Registration Eligibility Decision constitutes a final agency action, the court would nevertheless grant the defendant's motion because there are no docketing requirements specific to the Reregistration review.  The plaintiff argues that the Registration Standard process docketing requirements set out in 40 C.F.R. § 155 apply to the Reregistration review process because FIFRA defines registration to include reregistration.  Pl.'s Opp'n at 29, 31 (citing 7 U.S.C. § 136(z)).

The defendant argues, on the other hand, that the docketing requirements set out in 40 C.F.R. § 155 only apply to the Registration Standard review process, and not to the Reregistration review.  Def.'s Mot. at 7-8.  The defendant further asserts that there are no regulations requiring the creation of a public docket during a Reregistration review.  Def.'s Reply at 10-12.  In support of its interpretation that section 155 does not apply to Reregistration, the defendant points to the plain language of the regulations.  Def.'s Reply at 11.  Section 155 of the Code of Federal Regulations is entitled "Registration Standards." 40 C.F.R. § 155.  The defendant further argues that parts 155.30 and 155.32 do not apply to Reregistration because the section adding Reregistration was passed in 1988, three years after the regulations were adopted.  Def.'s Reply at 10.

The court "must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994).  That interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* at 512 (quoting *Udall v. Tallman,* 380 U.S. 1, 16-17 (1965)); *see also Christensen v. Harris County,* 529 U.S. 576, 588 (2000) (explaining that courts should defer to agency interpretation when the regulation's meaning is ambiguous).  Because the defendant's interpretation of the statute is based on its plain language, the court determines that the defendant's interpretation is not "plainly erroneous or inconsistent." *Thomas Jefferson,* 512 U.S. at 512; *Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs, Dep't,* 519 U.S. 248, 261 (1997) (noting that the plain language controls unless it leads to results that are "'absurd or glaringly unjust'") (quoting *United States v. Rodgers,* 466 U.S. 475, 484 (1984).

atrazine IRED.

### C.  The Plaintiff Lacks Standing to Bring the FACA Claim

The plaintiff claims that the defendant established and utilized an advisory committee to gain advice in its decision to issue the October 2003 IRED for atrazine, and that the defendant's alleged use of the advisory committee violates FACA, 5 U.S.C. App. 2 § 3(2).  Compl. at ¶¶ 47-48.  The defendant denies that it established and utilized an advisory committee, and argues that the plaintiff does not have standing to raise these alleged violations of FACA.  Def.'s. Mot at 30-33.  For the reasons that follow, the court holds that the plaintiff lacks standing to bring the FACA claims.

### 1.  Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies.  U.S. Const. art. III, § 2. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102 (1998).  Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam).  The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).  At the pleading stage, general factual

allegations of injury resulting from the defendant's conduct will suffice. *Id.*

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Defenders of Wildlife*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* Our court of appeals has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

### 2. The Plaintiff did Not Request the FACA Materials under FOIA

The plaintiff seeks an order requiring the defendant to publicly release all materials relating to the alleged advisory committees, as required by FACA, 5 U.S.C. App. 2 § 10. Compl. at 29, ¶ 4. Section 10(b) of FACA states that:

> Subject to [FOIA] the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.

5 U.S.C. App. 2 §10(b). The defendant argues that the plaintiff has not suffered any injury

because it did not make any specific request for these records.  Def.'s Mot. at 31; Def.'s Reply at 14-16; Def.'s Resp. at 6-8.  The court agrees.

"[A] refusal to provide information to which one is entitled under FACA constitutes a cognizable injury sufficient to establish Article III standing."  *Byrd*, 174 F.3d at 243 (citing *Public Citizen*, 491 U.S. at 449).  To establish that the agency refused the request, a plaintiff must show only that "[it] sought and [was] denied specific agency records."  *Public Citizen*, 491 U.S. at 449 (applying the same analysis to requests for information under section 10 of FACA as it had previously in FOIA cases).  In the instant case, the plaintiff lacks standing to bring its claims under section 10(b) of FACA because it did not make a specific request for the documents relating to the alleged advisory committees.  While the plaintiff alleges that it wrote to the defendant to "complain that the agency was violating" FACA,  Pl.'s Opp'n at 17 & Colangelo Decl., Attach. F, the plaintiff did not submit a FOIA request for the documents. 5 U.S.C. App. 2 §10(b); *see also Cummock*, 180 F.3d at 290 (reasoning that the public-at-large, unlike a a "duly appointed advisory committee member" must submit a FOIA request to obtain documents under FACA").  Because it did not make a specific request for the FACA documents, the plaintiff lacks standing to bring its FACA claims.

### D.  The Court Denies the Plaintiff's Request for Mandamus Relief

In the alternative, the plaintiff seeks a writ of mandamus compelling the defendant to carry out its docketing duties.  Compl. ¶¶ 69-72; Pl.'s Opp'n at 32-33.  The defendant argues that the plaintiff has not exhausted available judicial remedies and, accordingly, a writ of mandamus

is unavailable.  Def.'s Mot. at 27-28.  For the reasons that follow, the court declines to issue a writ of mandamus.

### 1.  Legal Standard for a Writ of Mandamus

A writ of mandamus is "an extraordinary [remedy] . . . to be utilized only under exceptional circumstances."[12]  *Haneke v. Sec'y of Health, Educ. & Welfare*, 535 F.2d 1291, 1296 (D.C. Cir. 1976).  "The necessary prerequisites for this court to exercise its mandamus jurisdiction are that (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff."  *Swan v. Clinton*, 100 F.3d 973, 977 n.1 (D.C. Cir. 1996) (internal quotations omitted); *see also Atl. Tele-Network, Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d. 126, 131 (D.D.C. 2003) (applying *Swan* test).  The plaintiff bears the "heavy burden" of showing that its right to issuance of the writ is "clear and indisputable."  *In re Cheney*, 334 F.3d 1096, 1102, 1107 (D.C. Cir. 2003) (internal quotations omitted).  Because these prerequisites are jurisdictional in nature, the plaintiff's failure to meet any one of the them deprives the court of jurisdiction and thus is fatal to the plaintiff's request.  *Swan*, 100 F.3d at 977 n.1 (indicating that the three prerequisites go to the court's jurisdiction).

### 2.  A Writ of Mandamus is Not Appropriate

The extraordinary remedy of mandamus is inappropriate in this case because the plaintiff has not exhausted its judicial remedies.  *DRG Funding Corp. v. Sec'y of Housing and Urban Dev.*, 76 F.3d 1212, 1216 (D.C. Cir. 1996) (holding that mandamus is inappropriate when a party

---

[12]     As one commentator has described it, mandamus is "the courtroom equivalent of rescuing a soldier from behind enemy lines."  *See* http://www.law.com/jsp/article.jsp?id=1048518246806.

may seek relief after an agency has taken a final action).  When the defendant concludes the

Special Reviews for atrazine and dichlorvos, and when the defendant issues a RED for atrazine,

the plaintiff will have standing to raise any claims against "preliminary, procedural, or

intermediate" agency actions leading to that final action.  5. U.S.C. § 704.  Until that remedy is

exhausted, mandamus relief is not appropriate.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss the

plaintiff's FIFRA and FACA claims.  The court further denies the plaintiff's request for a writ of

mandamus.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 8th day of March 2006.


RICARDO M. URBINA
United States District Judge